THE HONORABLE JOHN C. COUGHENOUR

1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9    SHELMINA BABAI,                          CASE NO. C12-1518 JCC

10                          Plaintiff,        ORDER

11            v.

12   ALLSTATE INSURANCE COMPANY,

13                          Defendant.

14

15          This matter comes before the Court on Defendant's motion for summary judgment (Dkt.

16   No. 27) and Plaintiff's motion for summary judgment (Dkt. No. 38.). Having thoroughly

17   considered the parties' briefing and the relevant record, the Court finds oral argument

18   unnecessary and hereby DENIES both motions.

19   **I.      BACKGROUND**

20          During a remodel, Plaintiff Shelmina Babai discovered water damage to various areas of

21   her home. (Dkt. No. 29.) She notified her insurer, Defendant Allstate Insurance Co. ("Allstate"),

22   about the damage on January 26, 2012. (Dkt. No. 38 at 5.) An Allstate claims handler inspected

23   the home on February 1, 2012, and denied her claim on the basis that the loss was "not 'sudden

24   and accidental' but rather a progressive loss." (Dkt. No. 30-4 at 3.) The denial letter cited the

25   policy provision excluding coverage for "wear and tear, aging, marring, scratching, deterioration,

26   inherent vice or latent defect" and "rust or other corrosion, mold, wet or dry rot." (Dkt. No. 27 at

2.)

Plaintiff hired counsel and Allstate sent another engineer to inspect her home. (Dkt. No. 30-4 at 8.) After this inspection, Allstate sent Plaintiff a letter stating that the damage had been repaired or obscured, which prevented the engineer from assessing it. (*Id.*) Allstate requested Plaintiff "specifically set forth exactly what damage is being claimed and what the alleged cause of loss is." (*Id.*) Plaintiff's counsel responded to this request, noting that he had answered the same question a month earlier and repeating that the claim was based on water damage throughout the house and to various wood structures. (Dkt. No. 30-4 at 10.)

Plaintiff originally sued in state court and Defendant removed pursuant to 28 U.S.C. § 1441(a). (Dkt. No. 1.) Plaintiff filed an amended complaint on December 17, 2012. (Dkt. No. 18.) She alleged that Defendant had breached the insurance contract, acted in bad faith, and violated both Washington's Insurance Fair Conduct Act ("IFCA") and Consumer Protection Act ("CPA"). (Dkt. No. 18 at 6–7.) Defendant now moves for summary judgment on all claims; Plaintiff moves for summary judgment on her coverage claims and her IFCA claims.

## II.   DISCUSSION

### A.   Summary-Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

### B.   Consideration of Exhibits

1     In support of her submissions, Plaintiff has submitted two expert reports about the cause

2 of the damage, a copy of Allstate's "Deluxe Plus Homeowners Policy," and an estimate from a

3 construction company about the cost of repairing damage to Plaintiff's home. (Dkt. No. 30.)

4 Defendant contends that these should be struck because "Plaintiff has failed to comply with any

5 of the required disclosures under FRCP 26," including by failing to identify witnesses, failing to

6 identify documentation supporting the damages claim, and failing to provide expert disclosures.

7 (Dkt. No. 42 at 1–2.) Defendant cites one specific fact, namely, that one of the expert reports is

8 dated October 25, 2013, which is after the discovery cut-off, although before the date for expert

9 disclosures. (*Id.*) Defendant provides no other basis for its assertion that Plaintiff failed to

10 comply with Fed. R. Civ. P. 26. By contrast, Plaintiff gives specific dates and citations, which

11 suggest that these materials did comply with the discovery schedule established by this Court.

12 (Dkt. No. 41-4 at 48–52.) In the absence of any supporting factual assertions suggesting how

13 Plaintiff failed to comply with Fed. R. Civ. P. 26, Defendant's request to strike these documents

14 is denied.

15    **C.**    **Liability under the insurance policy**

16     This Court evaluates whether an insurance policy covers a loss by a two-step process.

17 First, "[t]he insured must show the loss falls within the scope of the policy's insured losses."

18 *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003–04 (1992). If the insured does

19 so, then the insurer can avoid coverage only if it demonstrates that specific policy language

20 excludes the loss. *See id.* at 1004.

21     Although Defendant's initial denial stated that the loss was not "sudden and accidental,"

22 (Dkt. No. 27-3 at 18), Defendant now appears to agree that Plaintiff has demonstrated that there

23 was "sudden and accidental direct physical loss" to her insured home that falls within the

24 policy's scope. (Dkt. Nos. 27, 42 (arguing only that exclusions apply)). The question, then, is

25 whether Defendant has demonstrated that the policy excludes coverage for the cause of the loss.

26    **1.**    **Policy exclusions**

1    In its motion for summary judgment, Defendant bases nearly its entire argument on

2  *Sprague v. SAFECO Ins. Co. of America*, 276 P.3d 1270 (Wash. 2012). In *Sprague*, homeowners

3  discovered rot and decay in their walls and sought coverage on the basis that their deck was in a

4  state of "collapse." *Id.* at 1271. The insurance policy excluded coverage for both rot and for

5  building defects. *Id.* at 1272. The issue was whether the deck's loss of structural integrity was

6  covered as "a new and separate state of 'collapse,'" despite the fact that it resulted from the

7  excluded causes of rot and defective workmanship. *Id.* at 1273. The Supreme Court of

8  Washington concluded that the loss was not covered, because "collapse" "is the end result of the

9  deterioration that constitutes 'rot' [and is] not a new and different peril." *Id.*

10    Defendant argues that *Sprague* "squarely addresses" the issue in this case because "[t]he

11  Policy of insurance issued to Ms. Babai also contains nearly identical exclusions [to those in

12  *Sprague*] for rot and decay and for defective construction." (Dkt. No. 27 at 7.) Defendant cites to

13  no specific policy provision to support this assertion. In its reply brief, Defendant implicitly

14  concedes that the policy does not specifically exclude "construction defects" by relying on the

15  policy's exclusion of "inherent vices" and "latent defects" to argue that losses caused by

16  defective construction are excluded. (Dkt. No. 31 at 6–7.)

17    Defendant's interpretation of the term "latent defects," however, is based solely on cases

18  interpreting and applying state law from states other than Washington. (Dkt. No. 31 at 7–9.)[1]

19  Courts interpreting Washington law have concluded that "latent defect" is not synonymous with

20  "construction defect." *See Hiller v. Allstate Property and Cas. Ins. Co.*, No. 11-CV-0291-TOR,

21  2012 WL 2325603 at *6–*7 (E.D. Wash. 2012) (construction defects could have been discovered

22  by a reasonable inspection so were not excluded under the policy's latent-defect exclusion).

23

24  ───────────────

25    [1] Defendant's citation of an insurance treatise is likewise unhelpful, because it is
    undisputed that most policies do not cover construction defects. (Dkt. No. 31 at 6.) Defendant's
26  burden on summary judgment is to demonstrate that *this* policy excluded losses caused by
    construction defects. Generalities are unavailing.

1    Instead, "latent defects" are those that would not be discovered by a reasonable inspection. *See*

2    *id.*; *Tzung v. State Farm Fire and Cas. Co.*, 873 F.2d 1338, 1342 (9th Cir. 1989) (suggesting "a

3    general principle that defects in construction may constitute inherent or latent defects if the

4    problems thus created are not readily discoverable"). Construction defects may be—but are not

5    necessarily—latent defects, depending on whether they can be reasonably discovered. There is

6    no evidence in the record about whether this problem was readily discoverable, making it an

7    inappropriate basis for summary judgment.

8          Defendant also relies on the following exclusion: "Water or any other substance on or

9    below the surface of the ground, regardless of its source. This includes water or any other

10   substance which exerts pressure on, or flows, seeps or leaks through any part of the residence

11   premises." (Dkt. No. 27-3 at 36.) Defendant argues that this provision excludes the water damage

12   because the damage was caused by water leaking through the exterior of the premises. (Dkt. No.

13   42 at 8.) By its terms, however, the provision refers to water "on or below the surface of the

14   ground." The second sentence clarifies the scope of the first sentence—it does not expand the

15   provision to include "water that never reaches the ground." To the extent that there is any

16   ambiguity, it must be read in Plaintiff's favor. *See Moeller v. Farmers Ins. Co. of Washington*,

17   267 P.3d 998 (2011) (refusing to extend insurance-coverage exclusions beyond their unequivocal

18   meaning and construing them strictly against the insurer). While coverage for some of Plaintiff's

19   water damage may very well be excluded by this provision, there is evidence that at least some

20   damage resulted from water that never reached the ground. (Dkt. No. 40.)

21         Defendant also argues that a provision excluding losses caused by "flood, including

22   surface water" necessarily precludes coverage for losses caused by normal rain. (Dkt. No. 31 at

23   5.) Defendant relies on case law stating that "surface water is defined as vagrant or diffuse water

24   produced by rain, melting snow or springs." *Phillips v. King County*, 968 P.2d 871, 877 (Wash.

25   1998) (discussing municipal rights and liabilities associated with surface water that artificially

26   collects and is discharged on surrounding properties). Defendant concludes that this definition

suggests that "[t]he surface water exclusion precludes coverage for water intrusion claims arising from rain." (Dkt. No. 31 at 6.) The Court disagrees for several reasons. First, it equates surface water with water, thereby ignoring that surface water is "produced by" water from another source—it is not the same thing as the water from that other source. *See Phillips*, 968 at 877. Further, under Defendant's reading, any precipitation that touches a house becomes "surface water." A provision that refers to "flood, including surface water, waves, tidal water or overflow of any body of water" thereby expands to refer even to light drizzle falling directly onto a house. This is not how a consumer would interpret that provision. *See Moeller v. Farmers Ins. Co. of Washington*, 267 P.3d 998, 1003 (Wash. 2011) ("We must read an insurance contract as an average person would read it."). Finally, the Washington Supreme Court has recognized that excluding coverage for flood damage—which is what this surface-water provision does—does not necessarily mean excluding all rain damage. *See Kish v. Insurance Co. of North America*, 883 P.2d 308, 312–13 (Wash. 1994). A rain-induced flood is still a flood, but excluding flood damage does not necessarily entail excluding all rain damage. *Id.* at 313.

Defendant's last suggestion is that any damage caused by rain is not a fortuitous loss: rain in the Puget Sound region is "an almost absolute certainty," so any loss caused by rain is not covered because "reasonably certain or expected losses" are generally not covered by insurance. (Dkt. No. 42 at 9.) But obviously rain does not damage most houses; it damaged this house only because of construction defects. The very fact that most homes in the Puget Sound region are not water-damaged might actually support the conclusion that construction defects are the proximate cause of Plaintiff's damages. Defendant's argument amounts to the logical chain that (1) rain is an expected event, (2) the general concept of insurance is that it is not meant to cover losses from expected events, so therefore (3) this insurance policy must not cover losses from rain. If this were true, there would be no reason for insurance policies ever to exclude normal weather conditions (or any expected conditions at all) from coverage. Yet policies do exclude weather conditions. Allstate itself has another insurance policy that excludes losses caused by "[w]eather

1    conditions that contribute in any way with a cause of loss excluded in this section to produce a

2    loss." (Dkt. No. 43 at 12 n.36.) This policy contains no such exclusion.

3          Based on the submissions before the Court, there are multiple possible causes of some or

4    all of Plaintiff's damage, including construction defects, rain, water seeping below ground,

5    unspecified sources of water, and rot. Under Washington law, the efficient proximate cause rule

6    applies when multiple independent forces operate to cause the loss. "If the rule applies, the

7    question of which peril constitutes the proximate cause is left to the factfinder." *Kish v.*

8    *Insurance Co. of North America*, 883 P.2d 308, 311 (Wash. 1994). This is particularly true here,

9    where there are many apparent areas of damage—including the deck, the stucco, and numerous

10   areas of the house—and it is unclear whether there may be different causes for different areas of

11   damage. Without this information, neither party can show that there are no material questions of

12   fact. The Court therefore DENIES summary judgment on the issue of policy coverage.

13        **D.    Bad-faith claims**

14        Plaintiff claims that Allstate acted in bad faith in denying Plaintiff's claim. (Dkt. No. 18

15   at 6.) Insurers owe policyholders a duty of good faith. *See Smith v. Safeco Ins. Co.*, 78 P.3d 1274,

16   1276–77 (2003). If an insurer violates this duty then the policyholder may have a tort claim for

17   bad faith. *See id.* "To succeed on a bad faith claim, the policyholder must show the insurer's

18   breach of the insurance contract was unreasonable, frivolous, or unfounded." *Id.* at 1277 (citing

19   *Overton v. Consolidated Ins. Co.*, 38 P.3d 322 (2002)). "Bad faith will not be found where a

20   denial of coverage . . . is based upon a reasonable interpretation of the insurance policy." *Kirk v.*

21   *Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). An insurer's denial of coverage can be

22   incorrect without being unreasonable. *See Wright v. Safeco Ins. Co.*, 109 P.3d 1, 10 (Wash. Ct.

23   App. 2004). Washington regulations define specific acts that will breach an insurer's duty of

24   good faith. *See American Mfrs. Mut. Ins. Co. v. Osborn*, 17 P.3d 1229, 1234 (2001) (citing

25   Wash. Rev. Code. § 48.30.010; Wash. Admin. Code. §§ 284-30-300 to -800).

26        Defendant argues that it is entitled to summary judgment on this claim because the record

1   shows that it acted reasonably and in good faith. (Dkt. No. 27 at 7–8.) Construing the evidence in

2   the light most favorable to Plaintiff—as this Court must on summary judgment—there is some

3   evidence that Defendant misrepresented the policy provisions and may have failed to investigate

4   and respond in a full and timely manner (Dkt. No. 30-4 at 10–11). Defendant does not address

5   these specific actions, instead relying on the bald assertion that its actions were in good faith and

6   the conclusion that "long term water intrusion was the cause of the loss." (Dkt. No. 27 at 8.) As

7   discussed above, there is a material question of fact about whether the loss was covered under

8   the policy, and Defendant's decision to ignore Plaintiff's specific claims of misrepresentation

9   will not meet its burden on summary judgment. *See Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 785

10  (Wash. Ct. App. 2001) (summary judgment not permitted when there is question of material fact

11  about whether insurer's actions were reasonably justified). Plaintiff's bad-faith claims may be

12  weak, but having a weak case is not a fatal flaw on summary judgment. There remains a material

13  question of fact about whether Defendant acted unreasonably in its investigation and denial of

14  Plaintiff's claim.  *See Smith*, 78 P.3d at 1277 ("Whether an insurer acted in bad faith [is] a

15  question of fact."); *Sharbano v. Universal Underwriters Ins. Co.*, 161 P.3d 406, 421–22 (2007)

16  (trial court may resolve reasonableness questions only "if reasonable minds could reach but one

17  conclusion"). The Court therefore denies summary judgment on Plaintiff's bad-faith claims.

18      **E.**    **Consumer Protection Act claims**

19        Plaintiff claims that Defendant violated the CPA. (Dkt. No. 18 at 6–7.) To prevail on a

20  CPA claim, a claimant must show: (1) an unfair or deceptive act or practice; (2) in trade or

21  commerce; (3) that impacts the public interest; (4) which causes injury to the party in his

22  business or property; and (5) which injury is causally linked to the unfair or deceptive act. *St.*

23  *Paul Fire & Marine Ins. Co. v. Onvia*, 196 P.3d 664, 669 (Wash. 2008) (citing *Hangman Ridge*

24  *Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531 (1986)). A violation of an insurance

25  regulation constitutes a *per se* unfair trade practice violation under the CPA. *See Osborn*, 17 P.3d

26  at 123; *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 667 (Wash. 2008). "[A]

1    single violation of a claims-handling regulation may violate the CPA." *Onvia*, 196 P.3d at 667. A

2    plaintiff, however, must establish that the he was injured by the unfair or deceptive act. *Id.* at

3    670.

4         Defendant argues that summary judgment on the CPA claims is appropriate because it

5    acted in good faith and because Plaintiff has not shown injury to her business or property. (Dkt.

6    No. 27 at 9.) But as discussed above there is at least some evidence that Defendant did not act in

7    good faith. And Plaintiff has provided evidence that the projected repair total will be nearly

8    $300,000. (Dkt. No. 30-4 at 34–35.) Defendant's refusal to pay for these damages establishes an

9    injury. *Cf. Michelman v. Lincoln Nat. Life Ins. Co.*, 685 F.3d 887 (9th Cir. 2012) (insurer did not

10   refuse to pay claim but merely refused to pay particular claimant without showing that he was

11   legally entitled to proceeds, which was consistent with state law).

12        **F.    Insurance Fair Conduct Act claims**

13        Defendant and Plaintiff both contend that they are entitled to summary judgment on

14   Plaintiff's IFCA claims. Defendant states in a conclusory fashion that the denial was reasonable

15   and in good faith. (Dkt. No. 27 at 10). Plaintiff identifies several statutory and regulatory

16   provisions that she claims Allstate violated. A cause of action under IFCA, however, requires not

17   just a violation of one of the enumerated provisions, but also that the denial of coverage be

18   unreasonable. *See, e.g.*, *Pinney v. American Family Mut. Ins. Co.*, No. C11-0175-MJP, 2012 WL

19   584961 (W.D. Wash., Feb. 22, 2012) (recognizing that the subject is debated, but following

20   analyses concluding that IFCA claims require an unreasonable denial of coverage). As the Court

21   concluded above, there are material questions of fact about whether it was reasonable for Allstate

22   to deny Plaintiff's claim. *See Sharbano v. Universal Underwriters Ins. Co.*, 161 P.3d 406, 421–

23   22 (2007) (trial court may resolve reasonableness questions only "if reasonable minds could

24   reach but one conclusion"). Therefore the Court DENIES summary judgment for either party on

25   the IFCA claims.

26

1

**III.    CONCLUSION**

2        For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 27) and

3    Plaintiff's motion for summary judgment (Dkt. No. 38) are both DENIED.

4        DATED this 13th day of December 2013.

5

6

7

8

9

10

11

John C. Coughenour
UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26