THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHELMINA BABAI,<br><br>            Plaintiff,<br><br>    v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>            Defendant. | CASE NO. C12-1518 JCC<br><br>ORDER DENYING DEFENDANT'S MOTION TO QUASH TRIAL SUBPOENA |

This matter comes before the Court on Defendant Allstate Insurance Company's Motion to Quash the Trial Subpoena to Rick Wathen (Dkt. No. 98), Plaintiff's response (Dkt. No. 100), and Allstate's reply (Dkt. No. 102).

Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion for the reasons explained herein.

I.    BACKGROUND

This case arises out of Plaintiff Shelmina Babai's claim to Defendant Allstate Insurance Company (Allstate) after discovering water damage in her home. (Dkt. No. 1, Ex. A.) After an initial investigation, Allstate denied Plaintiff's claim on February 1, 2012. (Dkt. No. 1, Ex. A at 3.) Subsequently, Plaintiff retained Mr. Donovan as counsel, and on June 12, 2012, sent Allstate a letter challenging the denial of coverage. (*Id*. at 4; Dkt. No. 27-3, Ex. B at 8.) Allstate similarly

1  retained counsel, including Rick Wathen, after the denial of coverage. (Dkt. No. 102 at 2.)

2       Several email and letter correspondences between Mr. Wathen and Mr. Donovan during
3  the period of June 20, 2012 to August 1, 2012 demonstrate the reopening of the investigation and
4  reconsideration of Plaintiff's claim after the initial denial of coverage and are relevant to the
5  issue before the Court. In an email on June 20, Mr. Wathen coordinated the inspection of
6  Plaintiff's property by an engineer. (Dkt. No. 101, Ex. 3 at 2–3.) Mr. Wathen inquired into the
7  cause of the loss to Plaintiff's property on June 22 (Dkt. No. 101, Ex. 3 at 2) and July 19 (Dkt.
8  101, Ex. 4), and whether Plaintiff had completed repairs to the property on June 26. (Dkt. No.
9  101, Ex. 3 at 1). In a letter on August 1, Mr. Wathen sent a copy of the insurance policy, a copy
10  of a Washington State Supreme Court case, and further inquired into the cause of the loss and
11  Plaintiff's theory of coverage so that "[p]rior to making Allstate's final coverage determination .
12  . . . Allstate [could] investigate and respond accordingly." (Dkt. No 101, Ex. 6.) Mr. Donovan
13  responded to Mr. Wathen's inquiries by email on June 20 and 26 (Dkt. No. 101, Ex. 3), and by
14  letter on July 20 (Dkt. No. 202, Ex. 5) and August 31 (Dkt. No. 101, Ex. 7).

15       The case was originally set to go to trial on May 5, 2014. (Dkt. No. 49.) The Court
16  vacated that trial date in light of a request for additional briefing. (Dkt. No. 78.) On October 8,
17  2014, the Court granted summary judgment for Plaintiff on two issues. (Dkt. No. 91.) Jury trial is
18  now set for May 4, 2015 to address the remaining issues. (Dkt. No. 93.)

19       On February 17, 2015, Plaintiff served a subpoena on Mr. Wathen, requiring that he
20  testify at trial. (Dkt. No. 99, Ex. A.) Allstate now moves to quash the subpoena. (Dkt. No. 98.)
21  Allstate previously submitted these arguments as a motion in limine on April 7, 2014 (Dkt. No.
22  66), which the Court terminated in light of the Court's order vacating the May 5, 2014 trial date.
23  (Dkt. Nos. 78; 84.)

24  **II.   DISCUSSION**

25      **A.   Standard for Quashing Subpoenas Under Fed. R. Civ. P. 45(d)(3)(A)**

26       The Court must quash or modify a subpoena that, inter alia, "requires disclosure of

privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv).

Allstate presents several arguments for quashing the trial subpoena to Mr. Wathen. First, Allstate argues that the subpoena would require Mr. Wathen to testify regarding information protected by the work product doctrine and the attorney-client privilege. Second, Allstate argues that the disqualification of Mr. Wathen as counsel would constitute an undue burden. Lastly, Allstate argues that the correspondence between Mr. Wathen and Mr. Donovan is not relevant to Plaintiff's bad faith and extra-contractual claims. In addition, Allstate asserts that if the Court requires Mr. Wathen to testify, it must also allow Allstate to call Mr. Donovan as a witness because the relevant correspondence occurred between the two individuals.

### B. Disclosure of Privileged or Other Protected Matter under Rule 45(3)(A)(iii)

Allstate attempts to invoke the protection of the work product doctrine and attorney client privilege to protect Mr. Wathen's testimony on the basis that his work on Plaintiff's claim occurred after the February 1, 2012 denial of coverage and after Plaintiff retained counsel and took an adversarial position to Allstate. (Dkt. No. 98 at 6–7.)

**1. Work Product Doctrine**

The work product doctrine is inapplicable to Mr. Wathen's testimony at trial because (1) Plaintiff seeks testimony, not the production of documents or tangible things, and (2) even if it did, the testimony sought does not relate to materials prepared in anticipation of litigation. The work-product doctrine is a qualified immunity that protects "certain materials prepared by an attorney acting for his client in anticipation of litigation." *United States v. Nobles*, 422 U.S. 225, 237–38 (1975) (internal quotation marks omitted) (citing *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); Fed. R. Civ. P. 26(b)(3). The work product doctrine only applies to "documents and tangible things." Fed. R. Civ. P. 26(d)(3); *Myer v. Nitetrain Coach Co. Inc.*, No. C06-804C, 2007 WL 686357, at *1 (W.D. Wash. Mar. 2, 2007); *Admiralty Ins. Co. v. U.S. Dist. Court for Dist. Ariz.*, 881 F.2d 1486, 1494 (9th Cir.1989). Materials prepared in the ordinary course of business

are not protected. Fed. F. Civ. P. 26(b)(3), 1970 Advisory Committee Notes.

First, Allstate does not identify any underlying documents it seeks to protect. Nor does the trial subpoena call for the production of any documents. Thus, Allstate may not avail itself of the work product doctrine. Next, even if Allstate had identified the emails and letters to Mr. Donovan as the documents it sought to protect or if the work product doctrine's protections extended past "documents and tangible things", Allstate has failed to show that Mr. Wathen acted in anticipation of litigation. The Court acknowledges that Allstate retained Mr. Wathen after the initial denial of coverage of Plaintiff's claim and after Plaintiff's attorney contacted Allstate to challenge the denial. (Dkt. No. 18 at 3–4.) Although Mr. Wathen did not participate in the investigation leading to the initial denial of coverage, the Court is not convinced that Mr. Wathen acted in anticipation of litigation because he was involved, to some degree, in the continuing investigation of Plaintiff's claim. (Dkt. No. 27-3, Ex. B.) Mr. Wathen's emails and letters to Mr. Donovan between June 20, 2012 and August 1, 2012 cannot be fairly characterized as "in anticipation of litigation." Rather, the correspondence is characteristic of an investigation of Plaintiff's claim: Mr. Wathen inquired into the cause of the loss and status of repairs and sent an engineer to inspect Plaintiff's property so that Allstate could make an informed final coverage determination. (Dkt. No. 101, Ex. 3; 4; 6.) Mr. Wathen's August 1, 2012 letter to Mr. Donovan explicitly requests further information from Plaintiff "so that Allstate can investigate and respond accordingly." (Dkt. No. 101, Ex. 6 at 4.) The fact that the correspondence occurred after the initial denial of coverage does not negate the fact that Mr. Wathen performed the duty of investigating Plaintiff's claims prior to any expressly anticipated litigation. Furthermore, Plaintiff did not file a complaint until August 31, 2012, after the relevant correspondence.

The Court refuses to extend the work product doctrine to protect a routine reconsideration and investigation of an insurance claim. Such a stretch would hardly serve the underlying purpose of the work product doctrine, which is to "shelter[ ] the mental processes of the attorney, [and] provid[e] a privileged area within which he can analyze and prepare his client's case.

*Nobles*, 422 U.S. at 238.

### 2. Attorney-Client Privilege

Nor does the attorney-client privilege protect Mr. Wathen's testimony regarding the investigation of Plaintiff's claim because while Mr. Wathen participated in the investigation and handling of Plaintiff's claim, he was not acting in his capacity as Allstate's advisor.

The party asserting the attorney-client privilege bears the burden of proving that the privilege applies to a given set of documents or communications. *U.S. v. The Corporation*, 974 F.2d 1068, 1070 (9th Cir. 1992). The party must show: 1) that legal advice was sought, 2) that the legal advice was sought from a professional legal advisor in his capacity as an advisor, 3) that the communications relating to that purpose were 4) made in confidence 5) by the client and that the communications were 6) at the client's instance, permanently protected from disclosure by the client or by the legal advisor, 7) unless the protection is waived. *In re Fischel*, 557 F.2d 209, 211 (9th Cir. 1977). The attorney-client privilege only protects disclosure of communications, and does not extend to disclosure of the underlying facts. *Upjohn Co. v. United States*, 499 U.S. 383, 395 (1981).

In Washington, "in first party insurance claims by insured's [sic] claiming bad faith in the handling and processing of claims . . . there is a presumption of no attorney-client privilege." *Cedell v. Farmers Ins. Co. of Wash.*, 176 Wash. 2d 686, 700 (2013) (en banc). An insurer can overcome that presumption and assert an attorney-client privilege or that documents are protected by the work product doctrine "upon a showing in camera that the attorney was providing counsel to the insurer and not engaged in a quasi-fiduciary function" such as investigating and evaluating or processing the claim. *Cedell*, 176 Wash. 2d at 699–700. "[T]o the extent that an attorney acts as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the attorney-client privilege does not apply." *HSS Enterprises, LLC v. AMCO*, No. C06-1485-JPD, 2008 WL 163669 at *3 (W.D. Wash. Jan. 14, 2008).

The correspondence between Mr. Wathen and Mr. Donovan plainly shows that Allstate's investigation of Plaintiff's claim extended past the February 1, 2012 denial of coverage. Plaintiff has successfully shown that Mr. Wathen was involved in the "quasi-fiduciary tasks of investigating and evaluating or processing" Plaintiff's claim. Allstate has not presented evidence that Mr. Wathen was acting in his role as legal advisor providing counsel to Allstate when he corresponded with Mr. Donovan.  In the absence of such evidence, Allstate fails to overcome the presumption that no attorney-client privilege attaches to the testimony sought.

C. Undue Burden under Rule 45(d)(3)(A)(iv)

Allstate also argues that Plaintiff's "late naming" of Mr. Wathen as a witness is a strategic attempt to disqualify him as defense counsel, which would impose an undue burden on Allstate. Allstate asserts that Plaintiff did not disclose or name Mr. Wathen as a witness through initial disclosures, in response to discovery requests, or in Plaintiff's Supplemental Witness Disclosure, and instead did so in Plaintiff's pre-trial statement on March 5, 2014.[1] The Court notes that Plaintiff has never filed a motion to disqualify Mr. Wathen as counsel.

The Court finds that requiring Mr. Wathen to testify will not impose an undue burden on Allstate because Allstate had sufficient notice that Mr. Wathen would be called. First, Plaintiff's Complaint and Amended Complaint, filed on August 31, 2012 and December 7, 2012 respectively, allege facts that are directly based on the correspondence between Mr. Wathen and Mr. Donovan between June 20, 2012 and August 1, 2012. (Dkt. No. 1, Ex. A at ¶ 22–26; Dkt. No. 18 at ¶ 23–27.) Plaintiff's bad faith and extra-contractual claims are partly based on Allstate's failure to conduct a further and timely investigation of Plaintiff's claim or inspection of Plaintiff's property after June 21, 2012. Because Mr. Wathen served as the Allstate representative communicating with Plaintiff during that time period, he is a logical witness.

---

[1] Fed. R. Civ. P. 45 does not provide a remedy for Plaintiff's failure to disclose Mr. Wathen as a witness through initial disclosures. While a party may bring a motion pursuant to Rule 37(c) to prohibit a party from using a witness or evidence at trial that it did not disclose according to the requirements of Rule 26(a), the Court has serious reservations that this record would support such a motion.

1  Furthermore, Plaintiff's production of the pre-litigation emails and letters between Mr. Wathen
2  and Mr. Donovan during discovery should have provided Allstate with notice that Plaintiff
3  considered this correspondence to "substantiate, show, relate to, describe or contain information"
4  concerning Plaintiff's legal action. (Dkt. No. 101, Ex. 2, at 20.)
5        Even if the complaints and discovery proved insufficient to put Allstate on notice that
6  Plaintiff planned to call Mr. Wathen as a witness, both parties agree that Plaintiff's Pre-Trial
7  Statement from March 5, 2014 identifies Mr. Wathen as a witness. (Not docketed.) Allstate
8  responded with a motion in limine on April 7, 2014. (Dkt. No. 66.) As Allstate's present motion
9  to quash is a verbatim copy of the April 7, 2014 motion in limine, it is unconvincing that the lack
10 of notice could prejudice Allstate, let along require Allstate to "retain new counsel with no time
11 to prepare for the pending trial." (Dkt. No. 98 at 4.) What might have been a valid and timely
12 concern over one year ago is now entirely illogical. While calling Mr. Wathen as a witness may
13 indeed lead to his disqualification as counsel, the Court finds that the year since March 5, 2014
14 should have provided Allstate with ample time to adjust its representation and strategy
15 accordingly.
16       **D.**    **Post Denial Correspondence**
17       Allstate argues that the post denial correspondence between Mr. Wathen and Mr.
18 Donovan is not relevant to Plaintiff's bad faith and extra-contractual claims because much of the
19 communication occurred after litigation commenced. The Court finds no basis to assume that
20 Allstate's ongoing contractual obligation to Plaintiff terminated after the initial coverage
21 determination on February 1, 2012 and after Plaintiff retained counsel. Allstate's argument has
22 also been rejected by other courts. *See Tavakoli v. Allstate Prop. & Cas. Ins*. Co., No. C11-
23 1587RAJ, 2013 WL 153905, at *4 (W.D. Wash. Jan. 15, 2013) (finding that the insurer has a
24 continuing obligation to adjust the insured's open claim even after litigation has commenced);
25 *see also Garoutte v. Am. Family Mut. Ins*. *Co*., No. C12-1787 BHS, 2013 WL 3819923, at *4
26 (W.D. Wash. July 23, 2013) (declining to adopt rule that performance under an insurance

contract need not occur once a complaint is filed and distinguishing *Blake v. Federal Way Cycle Center*, 40 Wash. App. 302 (1985)).

Furthermore, Allstate provides no evidence to suggest that the present litigation initiated before the filing of Plaintiff's Complaint on August 31, 2012 and before much of the correspondence between Mr. Wathen and Mr. Donovan. (Dkt. No. 1 Ex. A.) The February 1, 2012 denial of coverage did not liberate Allstate of its contractual obligations to Plaintiff. Thus, the Court finds the post-denial correspondence to be relevant to Plaintiff's bad faith and extra-contractual claims.

### E. Naming Plaintiff's Counsel as a Witness

Allstate suggests that if the Court permits Mr. Wathen to be called as a witness it must also allow Allstate to call Mr. Donovan as a witness because the relevant correspondence occurred between the two individuals. In so arguing, Allstate conflates Mr. Wathen's role as a quasi-fiduciary investigating and handling Plaintiff's claim with serving as an attorney. In addition to providing legal counsel to Allstate, Mr. Wathen played an active role in Allstate's normal business activities such as the investigation of Plaintiff's claim. To the contrary, Mr. Donovan corresponded with Mr. Wathen solely on behalf of Plaintiff as her representative and had no personal knowledge of Allstate's decision-making. Thus, Mr. Donovan lacks the capacity to address any of the relevant legal issues that will be presented at trial and could likely avail himself of the attorney-client privilege.

## III. CONCLUSION

For the foregoing reasons, Defendant's Motion to Quash Trial Subpoena to Rick Wathen (Dkt. No. 98) is DENIED.

//
//
//
//

DATED this 24th day of April 2015.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER DENYING DEFENDANT'S MOTION TO
QUASH TRIAL SUBPOENA
PAGE - 9